**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1304
_____

MICHAEL STRAUSBAUGH,
                                        Appellant

v.

GREENTREE SERVICING LLC; KML LAW GROUP PC; JILL P. JENKINS, Pa. ID
# 306588; DAVID FEIN, Pa. ID # 82628; JAMES ANTHONY; LORI HOGUE
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1:15-cv-01433)
District Judge: Honorable Christopher C. Conner
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 9, 2021

Before: MCKEE, SHWARTZ and RESTREPO, Circuit Judges

(Opinion filed May 25, 2021)
_____

OPINION[*]
_____

_____
[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Michael Strausbaugh appeals pro se from the orders of the United States District Court for the Middle District of Pennsylvania dismissing his second amended complaint and denying his motion to alter or amend that dismissal order. For the reasons that follow, we will affirm those orders.

I.

Strausbaugh is a federal prisoner who is serving a 45-year prison sentence imposed in 2012. That year, Green Tree Servicing LLC ("Green Tree")[1] initiated mortgage foreclosure proceedings against Strausbaugh in Pennsylvania state court, seeking to foreclose on his residence in New Oxford, Pennsylvania. Those foreclosure proceedings resulted in the property being sold at a sheriff's sale in 2013.

In 2015, at which point Strausbaugh was incarcerated at a federal prison in Arizona, he filed a pro se civil complaint in the United States District Court for the District of Arizona ("the DAZ"). The complaint, which raised both federal-constitutional and state-law claims related to the foreclosure action, was brought against Green Tree, the law firm that had represented Green Tree in the foreclosure action (KML Law Group, P.C.), two attorneys from that law firm (David Fein and Jill Jenkins), the process server who had served the mortgage-foreclosure complaint (James Anthony), the deputy prothonotary of the Pennsylvania state court in which the foreclosure action had been filed (Lori Hogue), and the attorney who had represented Strausbaugh in his federal

_____

[1] Although Green Tree is now known as Ditech Financial LLC, we will use its former name in this opinion.

2

criminal case (James West). Strausbaugh asserted that this complaint was properly before the DAZ pursuant to that court's diversity jurisdiction. See 28 U.S.C. § 1332.

The DAZ, concluding that venue was not proper in that district, transferred the complaint to the United States District Court for the Middle District of Pennsylvania ("the District Court"). The District Court then referred the complaint to a Magistrate Judge, who screened it and recommended that it be dismissed. In making that recommendation, the Magistrate Judge began by determining that diversity jurisdiction was lacking because Strausbaugh was a Pennsylvania citizen (notwithstanding his incarceration in Arizona) and some of the defendants were Pennsylvania citizens, too. The Magistrate Judge then explained that there was *federal-question* jurisdiction in this case because the complaint raised constitutional claims. However, the Magistrate Judge concluded that those constitutional claims failed to state a viable cause of action for various reasons. And since those claims were subject to dismissal, the Magistrate Judge recommended that the District Court decline to exercise supplemental jurisdiction over the pendent state-law claims. The Magistrate Judge concluded that amendment of Strausbaugh's complaint would be futile, so she recommended that the District Court dismiss the case with prejudice.

Strausbaugh objected to the Magistrate Judge's report, asserting, inter alia, that he should be given an opportunity to rebut the presumption that he was still a Pennsylvania citizen when he commenced this action. The District Court agreed with Strausbaugh on this point, declined to adopt the Magistrate Judge's recommendation, and granted Strausbaugh leave to file an amended complaint. A few weeks later, Strausbaugh filed

3

his amended complaint. And about a year after that, he filed a proposed *second* amended complaint ("the SAC"), claiming that he had forgotten to include certain factual allegations in his first amended complaint. The Magistrate Judge granted Strausbaugh's request for permission to file the SAC. That pleading, which is 68 pages long, alleged claims against all of the original defendants except West (Strausbaugh's former attorney), and it included allegations suggesting that Strausbaugh no longer had ties to Pennsylvania.

All but one of the defendants named in the SAC eventually moved to dismiss that pleading.[2] The Magistrate Judge recommended that the District Court grant those motions and dismiss the case in its entirety without affording Strausbaugh further leave to amend. As she had done before, the Magistrate Judge concluded that (1) diversity jurisdiction was lacking, (2) none of Strausbaugh's constitutional claims raised a viable cause of action, (3) it was appropriate for the District Court to abstain from exercising supplemental jurisdiction over the pendent state-law claims, and (4) amendment would be futile. On the issue of diversity jurisdiction, the Magistrate Judge explained that Strausbaugh had not rebutted the presumption that he was still a citizen of Pennsylvania, for the SAC "fail[ed] to allege any contacts with Arizona besides being incarcerated there, or otherwise indicate that he intends to reside in Arizona, as opposed to some other state, upon his release." (Mag. J. Report entered Aug. 6, 2018, at 10.)

_____

[2] Anthony (the process server) was never served and thus has not participated in this case.

On September 28, 2018, the District Court overruled Strausbaugh's objections to the Magistrate Judge's new report, adopted that report, and dismissed the case in its entirety with prejudice. Thereafter, Strausbaugh timely moved to alter or amend that judgment pursuant to Federal Rule of Civil Procedure 59(e). The District Court denied that motion on January 15, 2019. Strausbaugh then timely filed this appeal, challenging both the September 28, 2018 and January 15, 2019 orders.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's order dismissing the SAC. See In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012). We review the District Court's order denying Strausbaugh's Rule 59(e) motion for abuse of discretion, except with respect to matters of law, over which our review is plenary. See Addie v. Kjaer, 737 F.3d 854, 867 (3d Cir. 2013).

## III.

We begin our review with the SAC's two constitutional claims, both of which were brought solely against Hogue (the deputy prothonotary). Specifically, Strausbaugh claimed that Hogue violated his First Amendment right of access to the courts and his Fifth Amendment right to due process of law by failing to (1) send him a copy of the case file for the foreclosure action after his family paid for that copy, and (2) docket two record-related motions that he submitted in connection with that action.[3] We see no

---

[3] Strausbaugh brought these claims against Hogue in her individual (as opposed to official) capacity.

reason to disturb the District Court's dismissal of these claims. The First Amendment claim fails because Strausbaugh did not present any non-conclusory allegations demonstrating that any failure to act on Hogue's part reflected an intentional effort to deprive Strausbaugh of his right to access the courts. See, e.g., Simkins v. Bruce, 406 F.3d 1239, 1242 (10th Cir. 2005) ("[W]hen access to courts is impeded by mere negligence, . . . no constitutional violation occurs."); Snyder v. Nolen, 380 F.3d 279, 291 n.11 (7th Cir. 2004) (per curiam) ("[W]e have made clear that an allegation of simple negligence will not support a claim that an official has denied an individual . . . access to the courts."); see also Edinboro Coll. Park Apartments v. Edinboro Univ. Found., 850 F.3d 567, 572 (3d Cir. 2017) ("In evaluating the sufficiency of the allegations, we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." (internal quotation marks omitted)). Meanwhile, the Fifth Amendment claim fails because Hogue is not a federal actor. See Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir. 2001).[4] And we see no error in the District Court's determination that granting Strausbaugh leave to amend these claims yet again would be futile.

---

[4] To the extent that Strausbaugh's Fifth Amendment claim could liberally be construed as alleging a violation of his substantive and/or procedural due process rights under the Fourteenth Amendment, we conclude that, for substantially the reasons provided by the Magistrate Judge in her second report (which the District Court adopted), Strausbaugh failed to state a viable Fourteenth Amendment claim against Hogue. (See Mag. J. Report entered Aug. 6, 2018, at 16-17 n.11.)

Because Strausbaugh's constitutional claims were subject to dismissal, it was appropriate for the District Court to decline to exercise supplemental jurisdiction over his state-law claims. See Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000). Accordingly, he could proceed with those state-law claims in federal court only if there is diversity jurisdiction in this case. We now turn to that issue.

For diversity jurisdiction to lie, the plaintiff cannot, at the time the action is filed, be a citizen of the same state as any of the defendants. See Johnson v. SmithKline Beecham Corp., 724 F.3d 337, 346 (3d Cir. 2013).[5] "The citizenship of a natural person is the state where that person is domiciled," GBForefront, L.P. v. Forefront Mgmt. Grp., LLC, 888 F.3d 29, 34 (3d Cir. 2018), which "is established by an objective physical presence in the state . . . *coupled with a subjective intention to remain there indefinitely*," Washington v. Hovensa LLC, 652 F.3d 340, 344 (3d Cir. 2011) (emphasis added). "The party asserting diversity jurisdiction bears the burden of proof," and he "generally meets this burden by proving diversity of citizenship by a preponderance of the evidence." McCann v. Newman Irrevocable Tr., 458 F.3d 281, 286 (3d Cir. 2006).

Strausbaugh does not dispute that, before his incarceration, he was a citizen of Pennsylvania. The critical question here is whether he was *still* a Pennsylvania citizen (and, thus, he had not become an Arizona citizen) when he commenced this action while incarcerated in an Arizona federal prison. "Prisoners presumptively retain their prior

---

[5] Additionally, the amount in controversy must exceed $75,000, exclusive of interest and costs. See 28 U.S.C. § 1332(a). That requirement is not in dispute here. (See Second Am. Compl. 67 (seeking $500,000 in compensatory damages).)

7

citizenship when the [prison] gates close behind them." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 247 (3d Cir. 2013). Courts have held that this presumption may be "rebutted by a prisoner who . . . show[s] facts sufficient to indicate a bona fide intention to change his domicile to the place of his incarceration." Jones v. Hadican, 552 F.2d 249, 251 (8th Cir. 1977) (per curiam); see Hall v. Curran, 599 F.3d 70, 72 (1st Cir. 2010) (per curiam). To rebut the presumption, "the prisoner must offer more than conclusory statements and unsupported allegations." Hall, 599 F.3d at 72. "Factors to be weighed in determining domicile include the prisoner's declaration of intentions, 'the possibility of parole . . ., the manner in which [he] has ordered his personal and business transactions, and any other factors that are relevant to corroboration of [the prisoner's] statements.'" Smith v. Cummings, 445 F.3d 1254, 1260 (10th Cir. 2006) (alterations in original) (quoting Stifel v. Hopkins, 477 F.2d 1116, 1126-27 (6th Cir. 1973)).

Here, the District Court did not err in concluding that Strausbaugh had failed to rebut the presumption that he was still a citizen of Pennsylvania when he commenced this civil action. The SAC did not contain any allegations indicating that he intended to remain in Arizona indefinitely after he completed his lengthy prison sentence.[6] Although his objections to the Magistrate Judge's second report contained additional allegations on the citizenship issue, we cannot conclude that those allegations were sufficient to rebut the presumption, particularly given that his projected release date from prison was (and

---

[6] Strausbaugh's projected release date is not until 2049, when he will be in his late 60s.

8

still is) decades away and his son was still living in Pennsylvania.  See also Jones, 552 F.2d at 251 (indicating that "truly exceptional circumstances" are needed to rebut the presumption).[7]  Nor can we conclude that the District Court erred by not affording Strausbaugh another opportunity to amend his allegations of citizenship.[8]

Because Strausbaugh, like some of the defendants, was a Pennsylvania citizen when he commenced this action, the District Court correctly concluded that diversity jurisdiction does not lie in this case.  See Johnson, 724 F.3d at 346.  Accordingly, it was

---

[7] Specifically, Strausbaugh alleged that (1) "[he] intends to remain in Arizona indefinitely after release, and [he] has intended such since 2013"; (2) "[t]he Federal Bureau of Prisons lists [his] release address as Prescott, Arizona[,] where he intends to reside upon release"; (3) "[u]pon release from prison, [he] intends to start a business or obtain a job in Arizona and pay taxes in that state"; (4) "[he] intends to establish bank accounts in Arizona upon release"; and (5) "[he] intends to purchase a vehicle and have it registered in Arizona upon release."  (Strausbaugh's App. at 106.)  Strausbaugh also indicated that his prison "release contact" is a cousin who lives in Arizona.  But most of these allegations are simply too vague or conclusory, and we are not persuaded that the allegations about Strausbaugh's "release address" and "release contact" are weighty enough to tip the scales in his favor.

[8] "Defective allegations of jurisdiction may be amended, upon terms, in the . . . appellate courts."  28 U.S.C. § 1653; see Kiser v. Gen. Elec. Corp., 831 F.2d 423, 427 (3d Cir. 1987) (explaining that § 1653 "permits amendments broadly so as to avoid dismissal of diversity suits on technical grounds").  In advance of briefing, the Clerk directed Strausbaugh to "identify any additional allegations that he believes would support his contention that he is a citizen of Arizona."  (Clerk Order entered Feb. 20, 2020.)  Strausbaugh responded by providing the following additional allegations:  (1) "he prefers the . . . sunny and warm winter weather in Arizona over that of Pennsylvania"; (2) "he plans to capitalize on Arizona's large off-roading industry with his knowledge in automotive performance"; and (3) "he believes that Arizona is far enough away from Pennsylvania for him to be free from public scorn and hostility based on his crime of conviction."  (Strausbaugh's Opening Br. 3C-3D.)  Having considered these additional allegations, we are still not persuaded that Strausbaugh has done enough to rebut the presumption and establish that, when he commenced this action in 2015, he intended to remain in Arizona indefinitely after serving his decades-long prison sentence.

9

appropriate for the District Court to dismiss all of Strausbaugh's state-law claims for lack of jurisdiction. And since both those claims and Strausbaugh's constitutional claims were properly dismissed, there is no reason for us to disturb either the District Court's dismissal order or its subsequent order denying his Rule 59(e) motion.[9]

In light of the above, we will affirm the District Court's September 28, 2018 and January 15, 2019 orders.

---

[9] Strausbaugh argues that, if he was indeed still a Pennsylvania citizen when he commenced this action, the District Court should have dismissed only the diversity-destroying defendants (KML Law Group, its two attorneys, and Hogue), not the entire case. "[I]t is well settled that [Federal Rule of Civil Procedure 21] invests district courts with authority to allow a *dispensable*[,] nondiverse party to be dropped at any time . . . ." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832 (1989) (emphasis added)). However, as explained below, even if Strausbaugh could establish that each of the diversity-destroying defendants in this case were dispensable, see Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 421 (3d Cir. 2010) (discussing how to determine whether a party is indispensable), there would be no reason for us to remand this case to the District Court for further proceedings.

If all of the diversity-destroying defendants were dismissed, the only remaining defendant would be Green Tree (recall that Anthony (the process server) was never served). In October 2020, Strausbaugh filed in this Court a one-page document titled "Notice of Intent to Withdraw Monetary Claims against Appellee Greentree Servicing LLC." Therein, he indicated that, in view of a recent injunction entered in a bankruptcy proceeding involving Green Tree, he no longer intends to pursue his claims for compensatory and punitive damages against Green Tree. Although Strausbaugh noted that he "will continue to seek . . . [the] reversal of the state court judgment," we agree with Green Tree that he cannot pursue that claim in federal court because it is barred by the Rooker-Feldman doctrine. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). In short, because Strausbaugh presently has no claim that he can pursue against Green Tree in federal court, nothing would be gained by remanding this case.